Good morning, Your Honors. May it please the Court, Carrie Ganell for Petitioner Denys Cerritos Martinez. I would like, as I'm getting started, to just let the Court know that I'd like to reserve two minutes for rebuttal, please. Mr. Cerritos Martinez's immigration proceedings are rife with errors. There's missing and illegible documents, there are recorded when they were required to be by the applicable regulations, and in fact, for the most part, the government concedes that at every step of the proceedings there were errors. Don't they concede there should be a remand? They do. They concede there should be a remand with respect to the reasonable fear determination, Your Honor. And you don't want that? I do. But we've asked for two forms of relief, Your Honor. So the parties are in agreement with respect to the remand as to the reasonable fear determination. The open question for this Court is what's the appropriate remedy with respect to these errors? And in addition to the remand, Petitioner has requested that this Court vacate the reinstatement order, given the record that's currently before this Court. So it may be— So does the record have the prior order of removal in it? It has a very fuzzy document that the government says is the prior order of removal. How do we know what that document is? That's a very good question, Your Honor, and that's exactly why we've requested the relief that we've requested in this case. Because I don't think, looking at that document, there's a way for the government to meet their burden to this Court of establishing, by clear and convincing evidence, that that fuzzy scan is, in fact, the prior order of removal that's applicable to Mr. Surios-Martinez. It refreshes my memory, and I could have this confused with another case where the government tried later to get a more legible copy. They did, Your Honor. So there is an extra record copy that was submitted by the government post-briefing without any declaration or explanation as to where the document came from, whether in fact it was reviewed by the hearing officer, or why the copy that's part of the official record is illegible. And— Was there a request that we take notice of that document? There was a request that that document be substituted into the record, which—and we filed a motion for reconsideration. The clerk's office took the document and substituted it. Yeah, and didn't we say no? Not yet, Your Honor. Okay. I thought we—I know I said no, but I don't know what the other people said. That's not a way to submit a—properly submit a record. And that was our argument, Your Honor, that you shouldn't consider that document that's extra record. But even if you did— Why can't you—why can't that be looked into on remand as well? Because at remand, you're going to— I mean, this looks—this copy looks like it came from the assistant district counsel, and that's why it's clear as opposed to what might have been faxed or Xeroxed as the original document. That's why the original document is not as legible as it should be. Both the illegible copy and the purportedly legible copy bear the same—bear that same stamp from the district counsel's office. What the government claimed is that that's simply a more legible copy of the document that was originally in the record. But it's petitioner's position that it doesn't matter which document you look at, because ultimately we end up in the same place. And I think the way to think about this is really this question of what happens when Mr. Cerritos-Martinez is before that immigration officer? So we know, for the reason—for the reinstatement proceeding, we know going in that the government has discretion that it can exercise when it wants to reinstate petitioner's removal order. It can do one of two things. Either it can have this review by an immigration officer, which is the procedure that was elected with respect to petitioner, or there could be a hearing before an administrative judge. The government here, the agency here, used its discretion and elected to do the considerably more streamlined, lacking more procedural safeguards option of having the review by the immigration officer. And there's nothing unlawful about that. We're not contesting that determination. However, once the government decides, once the agency decides that it's going to use that review by an immigration officer, 241.8 says there are only three things that that officer has to conclude. Only three. And this court has already expressed serious reservations about the lack of procedural safeguards. What the government has to prove is that the immigration officer obtained and reviewed an actual copy of the removal order that they're attempting to reinstate. Can I ask you, is there any doubt that there was such a removal order? That this person was removed pursuant to a removal order initially? There is no dispute with respect to the record that there was a—that there was a removal order. So why are we worried about—about whether this is the right copy? Because there are so few procedural safeguards that you want to make sure you're reinstituting a removal proceeding to remove someone from this country. And the regulations say there are only three things you have to do, and one of them is to get the copy of the removal order that you are going to reinstate as the immigration officer. I know, but it—it sort of seems to me it's—it's an intuitive reaction, and I may be wrong, but as long as everybody concedes there was such a document and—and that she was removed, it seems to me sort of harmless to be arguing about it now and to be worried about whether there's an official stamp on here or whether there was the government submitted an affidavit that would have properly authenticated it because it's undisputed that there was such an order. That is true in multiple cases that have been before this Court where petitioners have been subject to various immigration proceedings. There have been admissions, direct admissions, such as in Villa-Angueno, direct admissions by the petitioner of the fact that the government's required to prove, and that's been insufficient according to this Court because the government has to prove they followed the policy. And the reason that that's important, Your Honor, and the reason it's particularly problematic in this case is not just the fuzzy scan. If it was just an issue of an illegible document, that would be one thing. But what we know is that when the immigration officer reviews this file of Mr. Chirides Martinez and goes to reinstate the order, what he writes down on his reinstatement order is that the date of removal is January—June 2, 2008. Where did that date come from? Because the government's never explained that. And what we know is that it didn't come from the original removal order, the legible copy or the illegible copy. The illegible copy, you can't read the date, and the legible copy, the date's January 7, 1998. And the government has to prove that they were looking at and had a copy of that order in order to reinstate. I don't know where that date came from. But it's not petitioner's fault to prove that. I realize that, but is there any way we can know which date or what order the immigration officer was relying on? The government certainly hasn't proven that by clear and convincing evidence, which they're not going to prove. But the government still has that question. May I ask you, what is the difference? The belief that you want is to vacate, and then could the government introduce in the vacated proceedings the right order? Absolutely, Your Honor. And so presumably what the government would do at that point is issue a notice to a peer, would start removal proceedings and have an immigration judge present. If the government could at that point establish using that procedure that they had for transfer removal, then obviously it's possible the petitioner would be removed. The petitioner would have an option at that point as well to establish any relief that he may be eligible for. But we're not asking for anything that the government... And what happens if we don't vacate, as I assume the government's going to say? They're going to say just remand on the other basis that they didn't have the transcript. And that leaves this question open, Your Honor, for potential revisiting after the conclusion of those reasonable fear proceedings when there's no reason to do so. But I mean, the only difference will be that they have to go back and produce this document, which may or may not be the right document. Well, there's two different issues that we're talking about. One is the reasonable fear proceedings, which is a precursor to getting the hearing. So if the reasonable fear is established, then there'll be a full hearing before an immigration judge. So that's one possibility. Or if this panel vacates the order, he'll go straight to an administrative law judge where the government will have every opportunity to establish that he's subject to removal if they can. Why would he go straight to an administrative law judge? Why wouldn't they just produce the right document? Presumably they would. And then he wouldn't go to an administrative law judge. He would go to an immigration officer, right? No, because he would already be before an immigration judge. If the order is vacated, then he would be submitted for proceedings before an immigration judge in that instance, if the reinstatement order is vacated, because the government's already had an opportunity to use the other procedure and failed to do so in a way that respected their regulations and protected his due process. Well, we're going to give you a minute afterwards. Thank you, Your Honor. Good morning, Your Honors. May it please the Court, Timothy Hayes on behalf of the Attorney General. Can you tell us the difference, if we vacate, not just because of the transcript of the hearing, but because of the illegible or unknown status of the prior removal, if we were to vacate that, what do you envision that would be different? It would go back to the asylum officer that issued the reinstatement order. They would produce a more legible copy of the same document, and they would reinstate it again. Then Mr. Cerritos would go to a reasonable fear interview. From your standpoint, does that do any harm? Well, it does harm in the fact that there's administrative delay. This case has already been delayed, but beyond that, no. I would submit, though, that the record is sufficient here. Now, I understand the Court's concerns, but the copy that we attempted to substitute came directly from the DHS record. That was the same record that the asylum officer had. So I'm really troubled by the procedure that you used. You didn't submit a declaration. You didn't say that it was authenticated in any way, which is why I think our clerk's office should never have accepted this document. That's just improper. You should have filed a motion with some declaration saying what this is. And on its face, it raises some problems because it says the order of removal was January 7, 1998, whereas the reinstatement says it was June 2, 2008, which really leaves a big question as to whether your officer handled this properly in the first place. Well, Your Honor, I think all the parties agree that there was a prior removal order. We do concede that there is a date discrepancy. Now, I cannot tell you definitively why there is a date discrepancy. I have a theory if the Court wants to hear it, but it's a theory. It's a pretty big discrepancy. It's like a decade difference. Oh, it is. But does it really matter? I mean, it seems to me this is not a very great, earth-shaking issue we have, and you're not harmed if we vacate it and you just produce the right order. We're harmed to the extent that it has to go back, and there's some administrative bureaucracy that has to attend to it. But there is no need. Maybe they'll get it right this time. Well, I think they did before, Your Honor. The reason why the copy is fuzzy is not because the copy was fuzzy before the asylum officer. It's fuzzy because when the contractor that prepares this for the Court made a photocopy of it, they didn't do a very good job. That's the bottom line. You see, we're not really sure that it's the right order because of the discrepancies. Well, the order itself is – oh, I understand. You're referring to the date discrepancy. Right. I think it was entered incorrectly in the computer system. And the reason why I say that is if you look at page 6 of the DHS record that the Court has before it, it goes subsequent check of CIS, which is the immigration system that the Department of Homeland Security uses to keep track of everything. It says indicate subject who was ordered removed about 6-2-2008. I think it was the input of the date wrong. Why do you have to do this, what is it, 11 or 12 million times after we build the wall? Oh, I don't know, Your Honor. But they do have a lot of these cases. They have about 400,000 of them a year. So it keeps them very busy. And I think that it was just a date error that was entered into the system, and then that just propagates because the order that the asylum officer had before it was probably taken from the system. Yeah, but all you really have to do, as I gather, is if we vacate it, you get the right order. If anybody's got a question, why does it have this date instead of that date, that will go before the immigration officer. He'll be satisfied. Well, Brian, I want to emphasize, Your Honor, that it would go before the immigration officer. There was some discussion that it might go before an IJ. That's incorrect. Right now, the asylum office referred Mr. Cerritos to an immigration judge because he expressed a reasonable fear of removal to El Salvador. And the immigration judge only has limited jurisdiction because the charging document they filed with the immigration judge only gives the immigration judge the authority to do one of two things. Either they affirm the asylum officer's determination that there is no reasonable fear, or he disaffirms it and places him in what's called withholding only proceedings, which doesn't give him relief beyond withholding a removal or protection under the Convention Against Torture. So there would be no full-fledged removal hearing here unless the asylum officer elects to exercise discretion and place him in removal proceedings, but there's no indication that they'll do that. Is there a record that's maintained of the reasonable fear proceedings? And it is missing here, Your Honor, and that is very disconcerting. That's the part you agree we can remand on. For that, definitely for the reasonable fear process. Yes. Evacuating the order, I think, is extreme, but the reasonable fear process, absolutely. And we asked since 2012 to remand this case because we couldn't get the record. We still can't get the record. But does it exist somewhere? Well, presumably it does, but we've asked EOIR multiple times and EOIR cannot produce it. So, again, I don't know what happens. I think this is a good case to start all over with. Take a new person, get some training, be a good case. Well, I definitely agree with the reasonable fear process. It has to be started over again. I think the underlying restatement order is sound. There is a date discrepancy, but as Judge Corman was suggesting, it's pretty harmless. We have no reason to believe the document you substituted, which is authentic. I mean, you didn't submit anything to authenticate it in any way. We don't normally take documents not part of the record below on appeal. I am going to talk to our clerk's office. I think they should never have accepted this. Well, I think they didn't grant reconsideration, but they did refer it to this panel. So I understand your concerns, Your Honor. I would take issue with it being extra record evidence. It's just simply a more legible copy of what was already in there. We need to have something that's more than you just telling us that. I agree. There does need to be an affidavit or a declaration. They didn't do that either. Well, I think by now Judge Corman has a question. I think we got the issue pretty well. Okay. All right. Thank you very much, Your Honor. Thank you. Thank you. Okay, Sister, I said you could have a minute. How about 30 seconds? Okay. I think the panel does have a good handle on the issue in this case. And the important thing to remember is that this procedure has so few procedural safeguards that it is important to make sure that the ones that are in the regulation are actually followed. And the government admits that even with respect to our request for a vacature of the reinstatement order, that there's really no harm to the government at all, other than some additional administrative bureaucracy, which we would argue was caused by the agency and the way that this particular file was handled should be remedied by this panel. Thank you, Counsel. Thank you. And, Ms. Gunnell, thank you for doing this pro bono. Thank you, Your Honor. We appreciate it. Okay, Sister. I think it will be submitted.
judges: Reinhardt, Wardlaw, Korman